[No. H000754. Sixth Dist. Dec. 8, 1987.]

In re the Marriage of JUDITH T. and TIMOTHY J. REILLEY.
TIMOTHY J. REILLEY, Respondent, v.
JUDITH T. REILLEY, Appellant.

## COUNSEL

Richard Sherman and De Goff & Sherman for Appellant.

Bradford Baugh for Respondent.

## OPINION

AGLIANO, P. J.—Judith Reilley appeals from a judgment of dissolution of marriage, claiming error in the trial court's division of property and in the award of child and spousal support.

Judith and Timothy Reilley were married on March 15, 1969 and separated on February 15, 1981. Husband filed a petition for dissolution of marriage in 1983. In the ensuing judgment, entered on April 16, 1985, the trial court, inter alia, divided the parties' interest in a community residence after ordering that husband was to be reimbursed all his costs for improving the property. The court further ordered husband to pay spousal support of $1,500 per month and child support of $450 per month for each of two minor children. We conclude the trial court must recalculate the amount due husband for reimbursement. Further, the trial court failed to render a required statement of decision regarding the support issues. We therefore reverse.

### FACTS

#### A. *Division of Community Property*

In November 1980 the parties purchased the property in question, a second home in Aptos, California, for $90,000, paying cash in the amount of $25,500 and borrowing the balance of $64,500, for which they gave a note secured by deed of trust on the property.

After the parties separated in 1981, husband moved into the Aptos home. Between March and November 1984, he spent $55,977 of his separate property earnings to remodel the house, adding two bedrooms, a bathroom and a deck. His primary purpose was to provide separate bedrooms for the use of the parties' children when they visited him. Husband testified his wife was aware he was remodeling the house and did not object. Wife testified that they did not discuss the matter and she was informed of the remodeling only after it had begun. There was no evidence the parties discussed whether the community would reimburse husband for the cost of the remodeling.

Trial was held on January 23, 1985. At that time the principal balance on the purchase money note had only been paid down to $63,818.95. The parties stipulated that the fair market value of the property was $120,000.

Following trial the court found that the equity in the Aptos house was $56,307 and, applying Civil Code section 4800.2, enacted effective January l, 1984, concluded that husband was to be reimbursed the entire $55,977 he had separately paid to improve the property. The court then awarded the house to husband, found the community interest remaining in it to be $330, and ordered husband to pay wife $165 for her share.

■ Wife contends that it was error for the trial court to reimburse husband by applying the formula provided in Civil Code section 4800.2. We agree.

Section 4800.2[1] provides that in the division of community property upon dissolution of marriage, where there is no written waiver of the right to reimbursement, separate property "payments for improvements" of a community asset are to be reimbursed to the spouse making the contribution. On its face the statute appears to require reimbursement for improvements based strictly on the amount spent by the contributing spouse.

After the trial in this case, the California Supreme Court in *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253], held that retroactive application of section 4800.2 to cases pending on January 1, 1984, impaired vested property interests in contravention of due process of law. Legislation enacted subsequent to *Fabian* confirms that section 4800.2 does not apply to the instant case. (See Stats. 1986, ch. 49, § 1, Stats. 1986, ch. 539, § 1.)

Husband does not now argue for the application of section 4800.2. He relies instead on judicial precedent governing the question of reimbursement prior to the enactment of section 4800.2.

In *In re Marriage of Epstein* (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165], our Supreme Court held that a spouse may claim reimburse-

---

[1] Civil Code section 4800.2 provides: "In the division of community property under this part unless a party has made a written waiver of the right to reimbursement or signed a writing that has the effect of a waiver, the party shall be reimbursed for his or her contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division. As used in this section, 'contributions to the acquisition of the property' include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property." (Stats. 1983, ch. 342, § 2, p. 1538.)

ment for amounts spent after separation on preexisting community obligations. In that case, the husband provided the wife with monthly payments and paid various household bills after the parties separated. Because of this arrangement, the wife never sought an order for temporary support. The trial court awarded the husband reimbursement for the amounts spent to maintain the family residence during the separation. The Supreme Court reasoned the presumption established in *See* v. *See* (1966) 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776], that a spouse who uses separate property for community purposes is presumed to intend a gift[2] and thus not entitled to reimbursement, is not applicable where payment is made after separation. (*Id.* at pp. 82-84.) However, the court recognized there were certain situations in which reimbursement would be inappropriate: where the spouses agreed there would be no reimbursement; where the spouse intended a gift; where payment was made toward a debt for the acquisition or preservation of an asset the spouse was using and the amount paid was not substantially in excess of the value of the use; where the payment constituted a discharge of the spouse's duty to pay child or spousal support. Thus, the Supreme Court remanded for further findings, because it was unclear in *Epstein* whether the husband's payments constituted a discharge of his support obligation which would have precluded reimbursement.

■ We agree with husband that, as in *Epstein,* there is no basis for *presuming* he intended to make a gift to the community when, following separation, he improved the Aptos residence using funds derived from his separate income. Wife does not seriously contend otherwise.

■ Wife does contend, however, that the proper amount of reimbursement is not necessarily the amount husband paid for the improvements made. We agree with this contention because the property may not have increased in value at all or any increase attributable to the improvements may have been slight in comparison to the amount paid for them. In such cases full reimbursement for the cost of improvements might be inequitable particularly when, as in this case, the result is substantial elimination of the community equity.

A somewhat analogous situation was presented in *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548, 564 [206 Cal.Rptr. 641] (disapproved

---

[2] See also *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 816 [166 Cal.Rptr. 853, 614 P.2d 285], wherein the court stated: "It is a well-settled rule that a 'party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect.' [Citations.]"

in *In re Marriage of Fabian, supra,* 41 Cal.3d 440, at p. 451, fn. 11, to the extent it approved retroactive application of Civ. Code, § 4800.2). There, the wife claimed she spent $49,000 of her separate funds for "improvements," but the trial court denied her claim for reimbursement after noting the wife's records were inadequate and an appraiser had assigned no incremental value to the improvements. The judgment was affirmed. The Court of Appeal, even under the belief (as it turned out, mistaken) that section 4800.2 was then operative, determined that a spouse who has spent separate property funds after separation to remodel community property is entitled to reimbursement only to the extent it can be demonstrated the expenditure increased the fair market value of the property. (*Ibid.*) We perceive this rule as reasonable in a case where a spouse has unilaterally decided to improve community property in a postseparation setting. In the instant case the trial court did not have occasion to consider this approach to reimbursement since it appeared at the time of trial that dollar for dollar reimbursement was mandated by section 4800.2.[3] We will therefore remand this issue to permit the trial court to redetermine husband's entitlement to reimbursement. We do not hold that increase in value shall be the only measure of reimbursement to be applied. Factors may exist, even where the parties have been living apart at the time community property is improved, which, in equity, will justify reimbursement of the separate contribution in an amount which discounts a pure benefit approach. The evidence may disclose, for example, that the parties agreed that the improvement be made, or the improvement may have been necessary to preserve the asset. We leave consideration of such factors and their effect to the discretion of the trial court. (See, e.g., *Beam* v. *Bank of America* (1971) 6 Cal.3d 12, 18 [98 Cal.Rptr. 137, 490 P.2d 257].)

Wife next urges this court to order the trial court to revalue the property on remand. At the time of trial the parties stipulated the Aptos house was worth $120,000. Shortly after the trial court awarded the house to husband, wife contends he sold it for $160,000. (3) When a judgment is reversed, the trial court on remand may relieve a party of stipulations made at the prior trial. (*Ellis* v. *Klaff* (1950) 96 Cal.App.2d 471, 475 [216 P.2d 15].) In *In re Marriage of Johnson* (1983) 143 Cal.App.3d 57, 61 [191 Cal.Rptr.

---

[3] Since we have decided that section 4800.2 does not apply to the instant case, we need not determine what constitutes "payments for improvements" under this statute. There is every indication the Legislature enacted section 4800.2 in response to the rule laid down by the Supreme Court in *In re Marriage of Lucas, supra,* 27 Cal.3d 808, to govern the reimbursement issue in the case of contributions to the community property *prior to* separation. (See 16 Cal. Law Revision Com. Rep. (Sept. 1982) p. 2165 et seq.) Section 4800.2, however, is not literally limited to that time frame. Thus, the Legislature should, or a future case will have to, determine whether the amount of "payments for improvements" must invariably be the measure of reimbursement for improvements made *after* the parties have separated.

545], the trial court, in its memorandum of intended decision, found the fair market value of an asset to be $90,000, but before the judgment was rendered the husband sold the asset for $140,000. The appellate court held it was an abuse of discretion to deny a motion for reconsideration of the value of the community asset. In the instant case, the trial court on remand should exercise its discretion whether to relieve wife from the stipulation and take evidence on the issue of fair market value.

B. *The Support Order*

■ Wife also contends the judgment must be reversed because the trial court did not render a statement of decision relative to the amounts awarded for child and spousal support.

After testimony had been taken at the hearing the trial court outlined a briefing schedule for closing argument. Husband's attorney then orally requested a statement of decision. Wife's attorney requested confirmation that closing arguments would be in letter form and that a statement of decision had been requested. The trial court then indicated that since a statement of decision had been requested, a judgment would not be entered for another month. After being instructed to prepare a judgment on all issues except disposition of the Aptos property and support, husband's attorney stated: "I waive a statement of decision on the contested issue of visitation." Neither party waived the statement of decision on the issues of division of the Aptos property or child and spousal support. The trial court did not designate either party to prepare the statement of decision and it did not prepare one itself.

Code of Civil Procedure section 632 provides that the trial court shall issue a statement of decision upon the request of any party appearing at the trial where the request is made prior to the submission of the case tried in less than one day. The statement of decision must explain the factual and legal basis for the decision.[4] Here neither party was designated to prepare

---

[4]Code of Civil Procedure section 632 provides: "In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision. [¶] The statement of decision shall be in writing, unless the parties appearing at trial

the statement of decision and consequently the trial court was required to do so. (See rule 232, Cal. Rules of Court.)

The record reflects husband earned the following amounts prior to the time of trial:

| 1978 | $ 38,945 |
| 1979 | 39,859 |
| 1980 | 41,584 |
| 1982 | 57,271 |
| 1983 | 115,167 |
| 1984 | 252,000 |

Wife testified she and the children required $4,500 per month to meet their expenses. She had previously filed a financial declaration indicating her expenses totalled $2,400. There was also expert testimony concerning wife's ability to engage in gainful employment, although at the time of trial she was not employed. Without the statement of decision in the instant case, we are unable to determine what the trial court found husband would earn in 1985, the degree of wife's income potential, and the family's needs. A statement of decision is also useful to guide future decisions because support orders are modifiable. (*In re Marriage of Thompson* (1979) 96 Cal.App.3d 621, 624 [158 Cal.Rptr. 160] [child support]; *In re Marriage of Harris* (1976) 65 Cal.App.3d 143, 149-150 [134 Cal.Rptr. 891] [spousal support].) It is reversible error when a statement of decision is not rendered after timely request therefor has been made. (*In re Marriage of S.* (1985) 171 Cal.App.3d 738, 746, 750 [217 Cal.Rptr. 561].)

The judgment is reversed and remanded for a redetermination of the amount of reimbursement to husband for improvements made on the Aptos property and for a statement of decision on the issue of child and spousal support. Costs and attorney's fees on appeal are to be determined by the trial court.

Brauer, J., and Capaccioli, J., concurred.

A petition for a rehearing was denied January 6, 1988, and the opinion was modified to read as printed above.

---

agree otherwise; however, when the trial has been completed within one day, the statement of decision may be made orally on the record in the presence of the parties."